UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

                        Plaintiff,                S1 10-cr-87 (PKC)

        -against-                      MEMORANDUM
                                                      AND ORDER

LARRY SEABROOK,

                        Defendant.

------------------------------------------------------------x

CASTEL, U.S.D.J.

         As a result of his conviction, defendant Larry Seabrook is subject to a money

judgment, in the amount of $418,252.53, imposed pursuant to federal forfeiture law.  18 U.S.C. §

981(a)(1)(C); 28 U.S.C. § 2461.  The money judgment against Seabrook remains fully unpaid.

The government now moves, pursuant to Rule 32.2(e), Fed. R. Crim. P., and 21 U.S.C. § 853(p),

for the entry of a Preliminary Order of Forfeiture of Substitute Assets to include Seabrook's

pension benefits held by the New York City Employee Retirement System.  (Dkt. No. 131.)

Seabrook contests the forfeiture of his pension as a substitute asset, claiming that the government

has failed to show its entitlement to forfeit substitute assets, and forfeiture of his pension benefits

in particular is barred by state law and the federal forfeiture statutes.[1]  For reasons to be

---

[1] Seabrook also challenged the government's proposed substitute asset forfeiture on the ground that the Court's imposition of the forfeiture money judgment was a violation of his Sixth Amendment right to trial by jury.  In its April 7, 2015 Order (Dkt. No. 185), the Court explained why, at this juncture, a challenge to the money judgment before this Court is inappropriate.  The Order of Forfeiture provides that "[p]ursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, upon entry of this Order of Forfeiture, this Order is final as to the defendant, LARRY SEABROOK, and shall be deemed part of the sentence of the defendant, and shall be included in the judgment of conviction therewith."  (Order of Forfeiture, ¶ 2 (Dkt. No. 115).)  Rules 35 and 36, Fed. R. Crim. P., limit the Court's authority to alter a sentence.  Subsequent to the Court's April 7 Order, Seabrook abandoned his Sixth Amendment claims.  (See May 15, 2015 Tr., p. 35 (Court: "Am I correct . . . that there is no longer an issue before me with regard to trial by jury." Margaret Shalley for defendant: ". . . that's correct.")  Thus, Seabrook's challenge to his original criminal forfeiture determination is no longer before this Court.

explained, the Court concludes that the government is entitled to a preliminary order granting forfeiture of Seabrook's pension benefits as a substitute asset.

BACKGROUND

Defendant Seabrook was convicted, after a jury trial, of nine counts of conspiracy, mail, and wire fraud.  (See Judgment of Conviction, "Judgment" (Dkt. No. 115.))  The twelve-count Superseding Indictment ("Indictment") included an allegation seeking forfeiture of all property that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in the Indictment.  (See Incitement, p. 49 (Dkt. No. 39.))  The Indictment also included a substitute asset allegation, providing notice that if the forfeitable property were unable to be obtained as a result of defendant's actions or omissions, the United States would seek forfeiture of any other property of defendant.  (Id. at 50.)  On July 26, 2012, the jury returned a guilty verdict against Seabrook as to Counts Four through Twelve of the Indictment.  (See Judgment.)  On January 8, 2013, Seabrook was sentenced and ordered to forfeit $418,252.53, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.  (Judgment & Order of Forfeiture (Dkt. No. 115.))  The money judgment against Seabrook remains fully unpaid.  The Judgment is presently on appeal.

On December 17, 2013, while the case was assigned to the trial judge, Judge Batts, the government moved for entry of a Preliminary Order of Forfeiture of Substitute Assets, seeking the forfeiture of certain properties owned by Seabrook as substitute assets.  (Gov. Motion (Dkt. No. 131.))  The government asserts that the United States, despite the exercise of due diligence, has been unable to locate, obtain, or collect the proceeds of Seabrook's offenses.  (See id. at p. 3; Decl. of Steven Yagoda, Forfeiture Support Associate Financial Analyst, "Yagoda Decl.," ¶ 9 (Dkt. No. 131-1.))  According to the declaration of Steven Yagoda, a

litigation financial analyst, the United States has located the following asset of defendant: "Any and all funds, benefits, rights to disbursements, or other property held on behalf of, or distributed to, LARRY SEABROOK, by the New York City Employee Retirement System, Pension Number 368879, and all property traceable thereto."[2]  (Yagoda Decl., ¶ 10.)  The government seeks the forfeiture of Seabrook's interest in any payments or disbursements from the pension identified above, as a substitute asset to be applied towards Seabrook's outstanding money judgment.  (Gov. Motion, p. 3.)  The government asserts that "[i]f the Money Judgment is ever fully satisfied, the United States will return all right, title, and interest in any remaining undistributed benefits, if any, . . . to the defendant."  (Id.)  Seabrook contends that the government is not entitled to forfeit his pension as a substitute asset.

DISCUSSION

I.      Substitute Asset Forfeiture is Authorized

        Seabrook's forfeiture judgment was entered pursuant to 18 U.S.C § 981(a)(1)(C), which provides for forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" a qualifying offense.  Although section 981 governs civil forfeiture, it is made applicable to criminal cases by 28 U.S.C. § 2461(c).  See United States v. Diallo, 09-cr-858 (MEA), 2011 WL 135005, at *1 (S.D.N.Y. Jan. 13, 2011) aff'd, 461 F. App'x 27 (2d Cir. 2012) (section 2461(c) is "a bridging provision that links civil forfeitures provisions to criminal proceedings in certain circumstances" (alterations and citations omitted)).  Section 2461(c) provides that the procedures found in 21 U.S.C. § 853 govern criminal forfeiture proceedings. The Second Circuit has interpreted this to mean that section 2461(c) incorporates section

---

[2] Seabrook asserts that "he is the owner of a pension plan encompassing both his New York State and New York City pension and held by the New York City local Retirement System."  (Def. Brief, p. 4 (Dkt. No. 183).)  The Court understands the government's proposed forfeiture of substitute assets order to encompass Seabrook's interest in both his New York State and New York City pension benefits.

853(p)'s substitute asset provision.  See United States v. Capoccia, 402 F. App'x 639, 640 (2d Cir. 2010) (reference in section 2461(c) to the "procedures" of section 853 implicitly include the latter section's substitute asset forfeiture provision).

Under section 853(p), substitute assets shall be forfeited, when by an act or omission of the defendant, the forfeitable property:

> (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1).

The application of the substitute asset provision as a collection vehicle to enforce a money judgment is not intuitive or obvious.  The substitute asset provision has its most natural application to a circumstance in which a court has ordered forfeiture of specifically identifiable property which constitutes or is derived from proceeds traceable to the crime or was an instrumentality of the crime but such property is not then available to satisfy the order of forfeiture.  Where the statutory requirements are met, an order may be entered substituting other property for the specifically identifiable property.  A money judgment, in contrast, is not limited to identifiable property and reaches all property owned by the judgment debtor.  The government concedes that it could endeavor to enforce the money judgment against the pension assets without regard to the substitute asset provision and could assert its supremacy arguments in an enforcement proceeding.  (May 15, 2015 Tr. pp. 3-5.)  It argues that the substitute asset provision provides a second avenue of enforcement.  (Id. at 5-6.)

The Circuit has upheld the use of the substitute asset provision in a case where the government first obtained a forfeiture money judgment but was unable to locate and recover assets.  See United States v. Bermudez, 413 F.3d 304 (2d Cir. 2005) (per curiam).  The Court

affirmed the entry of a second order pursuant to section 853(p), directed to a Miami residence and a Swiss bank account.  Id.; see also United States v. Candelaria-Silva, 166 F.3d 19, 42-43 (1st Cir. 1999) (holding that the government may satisfy a forfeiture money judgment by seeking substitute assets, explicitly rejecting the argument that substitute asset forfeiture is unauthorized when no specific property is subject to forfeiture); United States v. Jennings, 5:98-cr-418, 2007 WL 1834651, at *2 (N.D.N.Y. June 25, 2007) ("Subsection 853(p) permits the Government to secure substitute assets to satisfy a forfeiture judgment, including a money judgment."); United States v. Numisgroup Int'l Corp., 169 F. Supp. 2d 133, 136-37 (E.D.N.Y. 2001) (authorizing forfeiture of substitute assets to satisfy a forfeiture money judgment).  This Court is bound by the holding in Bermudez.

Rule 32.2(e)(1), Fed. R. Crim. P., provides that, "[o]n the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that: . . . (B) is substitute property that qualifies for forfeiture under an applicable statute."  The government asserts that it is entitled to forfeiture of substitute property pursuant to section 853(p)(1)(B).  To reach substitute assets under this subsection the forfeitable property must have been "transferred or sold to, or deposited with, a third party" "as a result of any act or omission of the defendant."  21 U.S.C. § 853(p)(1)(B).  For reasons to be explained, the Court concludes that the forfeiture of Seabrook's pension benefits, as a substitute asset, is authorized under this subsection.

Prior to sentencing, the government submitted a proposed order that sought forfeiture of $418,252.53, reflecting "the amount received by defendant Larry Seabrook's coconspirators Gloria Jones-Grant and Tyrone 'Mitch' Duren as part of the conspiracies in Counts Four, Seven, and Ten."  (See Gov. Proposed Forfeiture Order (Dkt. No. 111.))  The

- 5 -

government submitted a spreadsheet itemizing the payments that Seabrook directed from New York City funds to his friends and family.  (See Government Sentencing Submission Regarding Restitution, Ex. A (Dkt. No. 106-1.))  The spreadsheet shows payments to Jones Grant of $304,082.27 and to Duren of $114,170.26.  (Id.)  These two numbers total precisely $418,252.53.  At sentencing, Judge Batts orally pronounced forfeiture in this amount, the written Judgment of Conviction reflected forfeiture in this amount, and the Order of Forfeiture entered by Judge Batts required forfeiture in this amount.  (See Sentencing Transcript, Jan. 8, 2013, p. 30; Judgment, p. 4; Order of Forfeiture.)  Thus, the exact amount of the forfeiture was the money obtained by Seabrook's co-conspirators Jones-Grant and Duren in furtherance of the conspiracies for which Seabrook was convicted.  In other words, Seabrook's actions in causing $418,252.53 to be transferred from New York City funds and deposited with Jones-Grant and Duren was the basis of the forfeiture money judgment.  The question before this Court is whether this offense conduct of Seabrook also permits the Court to find that the forfeitable property, "as a result of any act or omission of the defendant . . . has been transferred or sold to, or deposited with, a third party" within the meaning of the substitute asset provision.  21 U.S.C. § 853(p)(1)(B).  Put another way, the Court must decide whether the "act or omission of the defendant," including any deposit or transfer, must occur separately from the offense conduct.  The Court concludes that it does not.

"The statute at issue in this case [section 853] instructs that we interpret its terms 'liberally.' " United States v. Awad, 598 F.3d 76, 79 (2d Cir. 2010) (per curiam) (citing 21 U.S.C. § 853(o) ("The provisions of this section shall be liberally construed to effectuate its remedial purposes."))  In interpreting the statute, the Court considers both the plain language of the text and the remedial purposes of the statute.  See id. at 79 (holding that 21 U.S.C. § 853

- 6 -

permits imposition of a money judgment on a defendant who possesses no assets at the time of sentencing because nothing in the text of the statute prohibits such a money judgment and construing the language in this way furthers the statute's purpose of ensuring that the defendant is stripped of his ill-gotten gains).

The text of the statute contains no temporal restrictions regarding when the defendant must cause, by act or omission, the forfeitable property to be transferred to or deposited with third parties.  Indeed, it expressly applies to "any property" described in the statute that "was transferred or . . . deposited with, a third party" "as a result of *any* act or omission of the defendant."  21 U.S.C. § 853(p)(1)(B) (emphasis added).  The language does not require the transfer of property to be separate and distinct from the underlying criminal conduct.  Nor does the language of the statute require the funds to pass through the hands of the defendant.  In this context, "any" means "any."  Here, Seabrook structured a scheme that caused funds to be transferred to co-conspirators in the first instance without passing through his own hands.  Seabrook, through his own acts, caused funds to be transferred from the City of New York and deposited with nonprofits he controlled and then set the budgets and spending of those nonprofits to benefit his friends and family, including Jones-Grant and Duren.  (See Gov. Supplemental Brief, pp. 12-14 (Dkt. No. 196).)  The Court concludes that this provides a basis for a substitute asset order.

This interpretation of the criminal forfeiture provision gives effect to the remedial purposes of the statute by ensuring that the defendant does not escape the intended impact of his criminal forfeiture order.  See Awad, 598 F.3d at 79 (interpreting the criminal forfeiture provision in a manner that "ensur[es] that all eligible criminal defendants receive the mandatory forfeiture sanction Congress intended" (quoting United States v. Casey, 444 F.3d 1071, 1074

(9th Cir. 2006)); see also United States v. Coleman Commercial Carrier, Inc., 232 F. Supp. 2d

201, 204 (S.D.N.Y. 2002) ("Criminal forfeiture is designed to be punitive[;] . . . the crux of

criminal forfeiture is punishment, not recovery of particular property . . . .").

        The forgoing interpretation is consistent with Magistrate Judge Gold's Report and

Recommendation in United States v. Mahaffy, which was subsequently adopted by Judge

Gleeson of the Eastern District of New York.  Mahaffy, CR-05-613 (JG)(SMG), 2010 WL

5772889, at *4-5 (E.D.N.Y. Nov. 2, 2010) report and recommendation adopted, 05-cr-613

(JG)(SMG), 2011 WL 477371 (E.D.N.Y. Feb. 2, 2011).  In Mahaffy, defendant, who was

convicted of conspiring to commit securities fraud, was subject to a forfeiture order that was

determined based in part upon monies never directly obtained by defendant but paid in the first

instance to his employers.  Id. at *1-2.  The court granted the government's motion for forfeiture

of substitute assets pursuant to section 853(p)(1)(B), rejecting the defendants' argument that

because "the forfeiture amounts calculated by [the court] include funds received by defendants'

employers and not defendants themselves . . . defendants . . . could not have taken actions to

transfer or conceal them."  Id. at *4-5.  The court reasoned:

> When, as here, a forfeiture amount is calculated pursuant to § 981(a)(1)(C) and
> includes funds generated by a defendant's crimes but never received by him, it
> inevitably follows that the defendant could not have personally transferred or
> deposited those funds.  Thus, if the statute [21 U.S.C. § 853(p)] is to have any
> application at all in a case like this one, proof of criminal acts that caused
> forfeitable funds to be transferred to or deposited with a third party must be
> adequate to satisfy the requirements of § 853(p)(1)(B).  To the extent this is an
> expansive reading of the statutory language, it is compelled not only by logic but
> also by the statute's mandate that it 'be liberally construed to effectuate its
> remedial purposes.'  21 U.S.C. § 853(o).

Id. at *5.

        In sum, the text and purpose of the statute in addition to relevant case law support

the conclusion that forfeiture of substitute property pursuant to section 853(p)(1)(B) is available

- 8 -

here, where defendant's forfeiture money judgment was based on his causing funds to be transferred from one third party to another.[3]

II.     Substitute Asset Forfeiture of Defendant's Public Pension is Authorized Despite State Law Pension Protections

The Court now turns to whether Seabrook's city and state pension benefits may constitute forfeitable substitute assets. Seabrook argues that forfeiture of his public pension is barred by the New York State Constitution, which provides some restraints on the alienation of pension benefits. (Def. Brief, pp. 4-5 (Dkt. No. 183.)) Specifically, Article V, section 7 of the New York State Constitution provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." The Court concludes that this section of the New York State Constitution yields to the federal forfeiture laws to the extent that the state provision purports to foreclose forfeiture of Seabrook's pension benefits.[4]

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. State law is preempted to the extent it conflicts with federal law. See Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984) ("[S]tate law is . . . preempted . . . when it is impossible to comply with both state and federal law, or where the state

---

[3] The government also argues that it is entitled to forfeiture of substitute assets because the forfeited property, as a result of the act or omission of defendant, "cannot be located upon the exercise of due diligence." 21 U.S.C. § 853(p)(1)(A) (See Gov. Supplemental Brief, pp. 20-23.) The Court need not reach this issue. Because the Court concludes that the government has satisfied section 853(p)(1)(B), a demonstration of due diligence is not required to support entry of a Preliminary Order of Forfeiture of Substitute Assets.

[4] Seabrook not only asserts that New York state law bars forfeiture of his pension but he also contends that the federal forfeiture statutes "were never intended to permit seizure of the public pension of a corrupt city official." (Def. Brief, p. 2.) In support of his argument that federal forfeiture statutes do not permit seizure of pension benefits, Seabrook cites statutes that deny federal retirement benefits to certain federal officers who have been convicted of a set of enumerated offenses. See 5 U.S.C. § § 8312; 8332(o); 8411. The provisions Seabrook cites do not bear on the subject matter at issue here—criminal forfeiture of a city official's pension benefits—and thus are not relevant in adjudicating the government's motion.

law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." (internal citations omitted)).

        The federal substitute asset forfeiture provision states that "the court shall order the forfeiture of *any* other property of the defendant" up to the forfeitable property's value.  21 U.S.C. § 853(p)(2) (emphasis added).  Lawmakers spoke broadly in this substitute asset provision—the word 'any' does not allow for exemptions of pension benefits or any other property protected by state law.  See United States v. Gonzales, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning . . . .").  Congress could have excluded certain types of property from the substitute asset provision, but it chose not to do so.  See United States v. Fleet, 498 F.3d 1225, 1230 (11th Cir. 2007) ("When Congress wants to exempt specific types or categories of property from the reach of federal statutes, it includes language doing that, as it has done in the Bankruptcy Code.  When it wants all property to be swept within the ambit of federal law, Congress uses terms like 'any' without qualification or restriction, as it has done in the criminal forfeiture provision governing substitute property.")  That the substitute property provision should be construed broadly is supported by the statute's interpretive provision, which mandates that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes."  21 U.S.C. § 853(o).

        This Court's decision is consistent with courts that have found that federal forfeiture law preempts state law property protections and exemptions.  See Fleet, 498 F.3d at 1232 ("[W]e hold that where the forfeiture of substitute property is concerned, 21 U.S.C. § 853(p) preempts Florida's homestead exemption and tenancy by the entireties laws."); United States v. Bollin, 264 F.3d 391, 399 (4th Cir. 2001) (concluding that "pursuant to the Supremacy Clause, federal forfeiture law supersedes the garnishment protections that Georgia state law

- 10 -

provides for funds in an individual retirement account"); United States v. Curtis, 965 F.2d 610, 616 (8th Cir. 1992) ("The district court [held] that the federal forfeiture law [ 21 U.S.C. § 853(a)] superseded the Iowa homestead exemption law.  We agree with the district court.  It is a basic principle of constitutional law that, under the Supremacy Clause of Article VI of the Constitution, federal law supersedes state law where there is an outright conflict between such laws."); United States v. Lot 5, Fox Grove, Alachua Cnty., Fla., 23 F.3d 359 (11th Cir. 1994) (holding that the federal civil forfeiture statute, 21 U.S.C. § 881(a), which makes no exception for property protected by state law, preempts Florida's homestead exemption).

        While state law determines whether a defendant holds a property interest in certain assets, federal law determines whether that property may be forfeited.  See Bollin, 264 F.3d at 423 ("Although state law has traditionally been relied upon to resolve questions of property rights and interests arising under the forfeiture laws, once a defendant's property interest has been identified, federal forfeiture law determines whether the property may be forfeited." (internal alterations, quotation marks, and citations omitted)); see also United States v. Speed Joyeros, S.A., 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006); Fleet, 498 F.3d at 1231; United States v. Lester, 85 F.3d 1409, 1412 (9th Cir. 1996).  But see United States v. Lee, 232 F.3d 556, 561 (7th Cir. 2000).  Seabrook does not contest that he holds a property interest in his pension benefits, and, therefore, federal forfeiture law controls whether his property interest should be forfeited to the government.

        The Court concludes that New York's restraints on the alienation of pension benefits do not foreclose federal forfeiture of a city or state pension benefit.  As such, the government is entitled to the forfeiture of Seabrook's pension benefits as substitute property.

CONCLUSION

For the reasons outlined above, the United States' motion for entry of a

Preliminary Order of Forfeiture of Substitute Assets (Dkt. No. 131) is GRANTED.

SO ORDERED.

_____

P. Kevin Castel
United States District Judge

Dated:  New York, New York
        May 26, 2015